Good morning, Your Honor. This is Albert Chow. On behalf of the Petitioner Weijie Jiang. Your Honor, this is an asylum case, and in this case the petitioner had testified that he was arrested and detained and beaten by the police in China because of his belief in the discipline known as Falun Gong. Now, as in most asylum cases, the main issue in this case rests on credibility. And in this particular case, the immigration judge as well as the Board of Immigration Appeals erred in essentially making the entire adverse credibility finding based upon a forensics document laboratory report in which that particular report was concluded. Well, I'm not sure it was entirely based on that. There was an exchange also that was said to be unresponsive or something like that. Yes, Your Honor, and those are just two instances of unresponsiveness. The immigration judge as well as the BIA did not specifically state that he was inconsistent in his testimony, only that he was nonresponsive. And so what the judge through the BIA is doing is basing an entire adverse credibility finding, if you're not going to count the lab report, on two instances of nonresponsiveness. And the Ninth Circuit has stated on many times that any adverse credibility finding must be based on testimony or evidence that goes to the heart of the asylum claim, which is whether or not this person actually practices and believes in Falun Gong and whether or not this person was actually arrested and detained and beaten in the fashion that he states. And so we cannot base an entire adverse credibility finding on two instances of nonresponsiveness. As for the report, do you have any authority for the fact that the report can't just show doubt on the authenticity of the documents? Well, Your Honor, there's a case that we cited, Zahidi v. INS 222, Fed 3rd, 1157, 9th Circuit, 2000, in which in that particular case, the FDL report came back and said that they could not authenticate the document, but they could not state that it was counterfeit either. And so in that case, the court stated that a judge must make specific findings as to the indicia of reliability of that particular document. And that was done here. Now, there are a couple of things. One, they said it's inkjet printing, and that makes it suspect because inkjet printing doesn't work very well for stereo documents. Yes, Your Honor. And what I'm saying is, number one, there was a complete lack of foundation for this document. The maker of the document did not testify and specify or clarify what she meant by those statements. And the second thing is, at least the way I read it as a layman and not knowing anything about the forensics process, is that essentially government inefficiency, that it would be inefficient for a government to produce documents in this manner. So we're going to base an entire, you know, say that the document is probably fraudulent based upon government inefficiency? I don't believe that that should be a way to make an adverse credibility finding. Well, with regard to Exhibit 2, they said it was not possible to authenticate. Correct. With regard to Exhibit 3, they said it's probably not what it claims to be. Yes, Your Honor. I'm sorry, Your Honor. Go ahead. I'm sorry. Yes, but the reason that they claimed it was probably not is, again, essentially the same argument is that a government would not be so inefficient as to produce documents in this manner. Well, it's a little different, actually. It's because it has a sequential serial number, and it is a little hard to figure out how you would get a sequential serial number on a Xerox document. Okay, and the other thing about that particular document is that what does the maker of the document mean when it says probably, and again, probably not? And that's what I mean when I say there's no testimony by the forensics examiner. When I looked up the definition of probably in several dictionaries, it ranged from possibly to reasonably to in all likelihood. Well, which one is that? And we don't know. You know, and that's one thing. Well, but even if you leave that off the evaluation, there's information here. The information is that these documents were created essentially on copy machines, the forms. And that the second one, and I agree with you that it's certainly not out of the question that they could write out of forms and turn them out on copy machines. But the sequential numbering does seem a little hard to explain. And, Your Honor, I guess the only thing I can say about that is there's no evidence whatsoever that the Chinese government does not operate in that manner. And that's what I'm saying, that without any testimony or any other evidence, how do we know how the Chinese government or that particular government in that particular area produces these types of documents? Is there any evidence anywhere in the record about where these documents came from and who gave them to the petitioner or anything like that? No, Your Honor, and that's another concern regarding this case, is that if the judge or the trial attorney were so concerned about these documents with the FDL report, neither of them made or questioned the respondent on any of these documents. Neither of them during testimony informed the petitioner in this case that these documents were considered suspicious and asked him any questions based upon these documents. Well, he knew they were considered suspicious because he had this report. But they didn't ask him any questions to explain himself. Correct, Your Honor, and there was even a case cited by the government, Yamani Berhe v. Ashcroft, 393 F. 3rd and 907 9th Circuit, 2004, where in that particular case, there actually was a finding that the documents were fraudulent. And in that case, the 9th Circuit stated, well, that's not enough in and of itself to make an adverse credibility finding, that you still must look for the totality of the circumstances. And the 9th Circuit added that there was no evidence that the petitioner even knew that these documents were fraudulent. And in that case, they also found that the testimony of the petitioner in that case was found to be credible, and therefore, they said that the adverse credibility finding could not stand. And I believe that that's what we have in this case. There is not a finding that these documents are fraudulent, only maybe that they're suspicious, but it's ultimately inconclusive. And there's Isn't there a stipulation in the record that his wife would testify that he did, in fact, practice Falun Gong now? Yes, Your Honor, and that's another point that is, in this case, regarding a well-founded fear of future persecution. Because the immigration judge did find that future persecution was objectively reasonable in this case based upon country reports that state that the mere belief in the discipline of Falun Gong was enough to obtain punishment in China, anything ranging from loss of employment to imprisonment. What the judge said was that his subjective fear was, was, was, or could not be based because of the adverse credibility finding. But we offered proof that he does, in fact, practice Falun Gong because of his And DHS stipulated, at least, that that's what she would testify. They didn't stipulate that it was true, but that that's what she would testify. And they didn't cross-examine her at all? Correct. Correct. And so we believe that based upon this record, if you want to take into account his testimony, which at least regarding his belief and practice in Falun Gong was unquestioned, and you want to combine that with the offer of proof of his wife's testimony, that I believe that we have to say that he is a practitioner, and he does believe in the discipline of Falun Gong. And based upon that, whatever else you might say, should he not have a well-founded fear of future persecution? Does he not meet both the subjective standard, or the subjective prong of this test, as well as the objective prong of this test, which the immigration judge and the BIA both state that he did meet the objective prong. And so we believe that in this case, not only do we believe that he suffered past persecution based upon his essentially virtually unchallenged testimony, but also that he has a well-founded fear of future persecution because he satisfies both prongs of the subjective and objective tests. I want to save a little time for rebuttal and maybe wind up now. Thank you, Judge. Here from the government. Good morning. May it please the Court, Nicole Thomas-Doris representing the government. The petitioner who came to the United States on a fiancé visa applied for asylum first with the asylum officer and then in removal proceedings for the immigration judge, claiming that he was detained and fined in China as a Falun Gong practitioner. The immigration judge and the board found the petitioner not credible for two reasons. First, the FDL, or Forensic Document Laboratory report, seriously undermined the documents he submitted to corroborate the alleged detention and fine in China. And second, there were two instances of unresponsive testimony that went to the heart of the matter in that they regarded whether the petitioner disclosed his arrest, that alleged arrest during his visa application process, and also whether his parents told him that the police were still looking for him. The agency properly relied on the Forensic Document Laboratory report. The Forensic Document Laboratory report found that the penalty decision, which purported to sentence the petitioner to two months' detention, could not be authenticated, indeed, but the report went on to state that it may not be genuine and gave details as to why, stating that the production method was inconsistent with the method that would be expected for a production of high-volume forms. And with respect to the fine receipt, which was the first one. Just stop there for a minute. That doesn't sound very damning to me. It seems to me that even in this country it's not unusual if there's a form, for example, even if there's an official version of it, if you are running short of something, you put them on a copy machine and you make more of them. So it's really hard to say why that's a problem. Well, with respect to the penalty decision, the Forensic Document Laboratory is an expert forensic laboratory and they found that that was one thing that indicated that it simply may not be genuine, but we also have. But I just gave you. I mean, this is not high technology, this particular issue. Right? It's very simple and there's a very obvious explanation. I mean, I often send in forms by Xeroxing things so I can type it up and the thing I send in is going to be a Xerox. It's not going to be the original. The immigration judge and the board have broad discretion here to accept these documents as what they claim to be or not based upon this evidence that was in the record and the court in Lynn has required only some. But that's not the point. The point is that this was not a definitive. The only ground on which they said it may not be genuine is not a technical ground that requires any technical expertise. I mean, the fact that it was toning, toner technology did require technical expertise, but now that we know it in terms of evaluating it, it doesn't require any great technical expertise. Right. The petitioner, however, offered no explanation as to how he received these documents or. . . Was he asked? No. And it was the immigration judge. . . Why would he provide an explanation if he wasn't asked? Well, the immigration judge and DHS counsel were operating under the understanding that he had waived any objection to the FDL report as instructed in the immigration judge's pre-hearing order. Well, he's not objecting to the report. The report says what it says, and what it says is they don't know if it's genuine or not. So he doesn't have to object to the report. The report is not a false report. It says what the person who wrote it thinks, and it has some information in it. So why does he have to object to it? Right. Well, it was his burden to provide credible testimony overall, and he knew what this report said in advance of the hearing, and it was his burden to provide testimony explaining the documents or at least how he obtained the documents. He doesn't know in advance, of course, what the forensic laboratory is going to say. Excuse me? He doesn't know in advance what the forensic laboratory is going to say. Well, he knew what the report said before the hearing. Okay. And he did not object to the admission of those reports? Is that what you're saying? Right. He did not object. Okay. I thought you were – I understood you saying he didn't object to the – he's introducing the statements, and of course that's understood. He's not asked about it. On the non-responsiveness, I'm not sure I understand why it would be unusual for his parents to say over the telephone, the police came looking for you, but be reluctant to discuss Falun Gong. His answer was, well, you know, it's dangerous to discuss Falun Gong over the telephone. The police tracked down on it, and the immigration judge seems to have taken the view, well, it's equally dangerous to talk about the police looking for you, but it doesn't seem to me that necessarily follows. The police come to a house and ask questions about somebody. They're not trying to keep that secret, presumably, and say, well, you know, the police came looking for you. It's something the police aren't trying to keep secret, but discussing Falun Gong, it seems to me, is dangerous, and he said that. I don't know why that's not responsive. Well, at the record, at pages 121 through 123, the petitioner had to be asked multiple times why it was safe to talk about one subject and not the other, and DHS counsel actually had to ask him or tell him that he wasn't answering the question, and although under the substantial evidence standard, although there may be two likely conclusions drawn from evidence, the evidence must compel the finding that the petitioner is credible, and I think that the respondent argues that immigration judge was reasonable here in citing to this particular instance as nonresponsive in conjunction with the other instance of nonresponsive testimony regarding whether he disclosed his arrest. The BIA didn't specifically mention that exchange. Right. The board specifically mentioned, I believe, the phone call, the exchange regarding the phone calls. Well, I'm looking at their phone call now, and maybe you could be really specific about what was nonresponsive. They said to him, does your father still practice Falun Gong? I don't know because we don't talk about it over the telephone. And then they say, that's interesting because you're not allowed to say the place, the police were coming and he says we're afraid to be overheard by the police officers if we talk in my relative's house. So that's responsive to what was said about aren't you afraid of talking to the phone. He said yes, so we talked in the relative's house. And then it's safe to tell you in the relative's house the police are looking for you, but it's not safe to tell you whether your father still practices. Can you explain that? And then he says because we're on the list of Falun Gong practitioners. Now, it's true he only answered the second part of the sentence, not the first part, but that was understandable. It's not safe to tell you whether your father still practices. Can you explain that? So he explained it. And then he said, so then he clarifies the question. And he says, but it's not safe when you're talking about Falun Gong. I don't understand what's unresponsive about it. Well, I think the petitioner doesn't explain exactly why it's safe to tell him that the police are looking for him. But again, even if this court were to find that this particular instance here is not unresponsive as found by the immigration judge, the entire adverse credibility determination rested on another instance of unresponsive testimony and also the submission of two suspicious documents that went directly to the alleged arrest, which was the heart of his claim. And then briefly just to return to your question, Judge Berzon, he does go on to attempt to explain that his parents last talked to him, I believe, in 2003, but that didn't exactly answer why one topic was more safe than the other. And if I may respond to the argument that, as I said, the petitioner argues that the entire finding was rested upon just the forensic document laboratory report, but this court has found in Yemeni Berhe that just one fraudulent document alone in the record would not be substantial evidence. But here we have two suspicious documents combined with unresponsive testimony, and I believe that that was substantial evidence in support of the adverse credibility determination, and I see that I am out of time, Your Honor. Thank you. Thank you for your time. You have a little over a minute left. Yes, Your Honors, if I may, regarding the FDL report, it's true that there was no objection to this document and we're not contesting the admissibility of the document. What we're contesting is based upon Ninth Circuit law is that under a totality of the circumstances, this report can only be one of the tools used to make an adverse credibility finding. Why, knowing that it was going to be introduced and having seen it, whose responsibility is it at that point? If he has anything to say in response to it, either I didn't know this about it or, well, basically that. I mean, whatever might be wrong with this document, I didn't know about it. He could have said that and he didn't do it. Yes, and that is the petitioner's responsibility. But then if no questions were asked based upon this, then all we have is a document with no testimony by anybody, and so what kind of weight can we accord to this document? I mean, in my opinion, it's not much if no one's ever questioned him regarding this document and if the document itself states that essentially that everything is inconclusive. And so what I'm saying is if you're going to make an adverse credibility finding, you can't base the entire adverse credibility finding on one document. That ultimately is inconclusive, and that is what the IJ through the BIA did here in this particular case. Thank you. Okay, thank you both for your arguments. The case just argued is already submitted.
judges: Canby, Noonan, Berzon